# CHEW *v*. DISTRICT OF COLUMBIA.

STATUTES; "LOAN SHARK LAW;" "SECURITY."

1. The act of Congress of regulating the business of loaning money in small sums on securities at more than 6 per cent interest is remedial, and should be liberally construed with a view to giving force and effect to the intent of Congress. (Following *Reagan* v. *District of Columbia*, 41 App. D. C. 409.)

2. Instruments in the form of receipts given by the borrower to a lender, the total amount of which receipts equal the amount of the loan, and the separate amount of which are identical with the amount of the instalments agreed to be repaid, are "security" within the meaning of the act of. Congress regulating the business of loaning money in small sums at more than 6 per cent interest on security of any kind, direct or collateral, tangible or intangible,—especially where the borrower regarded them as notes delivered to the lender for the purpose of securing the debt.

No. 2689. Submitted October 6, 1914. Decided November 2, 1914.

HEARING on writ of error to the Police Court of the District of Columbia holding defendant guilty of loaning money on security at more than 6 per cent interest.          *Affirmed.*

The COURT in the opinion stated the facts as follows:

An information in the police court charged Nolan L. Chew, plaintiff in error, as manager for N. L. Chew & Company, with engaging in the business of loaning money on security at a greater rate of interest than 6 per centum per annum on the 23d day of September, 1913, in the District of Columbia.

Three witnesses testified to borrowing money, on the date aforesaid, of Nolan L. Chew & Company, at a greater rate of interest than 6 per centum per annum. One witness borrowed $100, from which $20 was deducted as interest, the party re-

ceiving $80 only. The witness agreed to pay to the defendant $10 on the 23d day of October, 1913, and $10 on the 23d day of each month thereafter until the sum of $100 was paid. The witness executed ten instruments and delivered the same to the lender. They were receipts for money as follows: "Received of N. L. Chew & Co. Ten Dollars," with his name thereto.

Other witnesses testified to loans of $50 each, from which $6 was deducted as interest, the borrowers agreeing to pay $10 in monthly instalments until the sum of $50 was paid. They executed what they called five notes for $10 each, but were in the form of the receipt stated above. A receipt was returned to each party at the time of paying an instalment.

Other witnesses testified that the defendant was a loan broker. He told witness that he was engaged in the business of making loans, and that he charged therefor interest at the rate of 4 per centum per month.

The defendant moved the court to direct a verdict of not guilty, which motion was denied. The jury were instructed that "if they find from all the evidence in the case that the defendant was engaged in the business of loaning money in the District of Columbia upon security, and charged therefor a greater rate of interest than 6 per centum per annum, their verdict should be guilty." The court also informed them that the court of appeals of the District of Columbia had already decided that such written instruments as those received by the defendant for the loans made on the occasions testified to in this case constituted security.

A verdict of guilty was rendered, and defendant was adjudged guilty. A writ of error has been allowed.


*Mr. Milton D. Campbell, Mr. Robert J. Tracewell* and *Mr. Thomas H. Patterson* for the appellant.


*Mr. Conrad H. Syme,* Corporation Counsel, and *Mr. Roger J. Whiteford,* Assistant, for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the court:

The testimony was sufficient to show that defendant was engaged in lending money at a greater rate of interest than 6 per centum per annum, and the single question is, Was this a lending upon security?

In *Reagan* v. *District of Columbia,* 41 App. D. C. 409, the court said of this act of Congress: "It is a remedial act, and should be liberally construed with the view of giving force and effect to the intent of Congress. In arriving at that intent, it is proper to consider the evils sought to be regulated, and the advisability of bringing the wrong, in all of its ramifications, within the limitations of the act. To this end, the intent of the lawmakers must be gathered from the law as a whole, and not from garbled extracts. This is not a usury statute as applied to the regulation of interest charges for the use of money in legitimate commercial transactions, but an act licensing, under limitations and restrictions, the loaning of money in small sums upon personal security."

It was also said: "In special statutes of this sort, where a particular remedy is sought or a wrong is to be restrained, the word 'security' has been applied in its broad sense to include a promissory note. . . . The present act, however, specially defines the securities included within its terms as 'any security of any kind, direct or collateral, tangible or intangible.' Without stopping to inquire whether the term 'intangible' security is broad enough to include every evidence of debt, we have no doubt of its including any evidence of debt executed by a debtor which will make the payment of money more assured or more easily enforced. . . . Congress is here dealing with a subject which it is seeking to regulate generally and without apparent exception. To this end broad terms have been used to express its comprehensive intent. The court, therefore, in interpreting the act will not close its eyes to that which, as a matter of common knowledge, led to the enactment of the law."

The manifest purpose of the act was to prohibit the lending

of money upon any unlawful form of indebtedness or security. The terms of the law are broad enough to punish all lending of money of the kind described, without regard to the particular form which the debt may be made to assume. It is apparent that the borrowers understood these receipts as notes delivered to the lender for the purpose of securing the debt. They were executed by the parties and delivered for the purpose of preserving evidence of the loan, although in the form of a receipt. The scheme was intended for the purpose of evading the law, and cannot be permitted to have that effect.

We are of the opinion that the Police Court was right and that its judgment must be affirmed.       *Affirmed.*